UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MANDI M. FUNK, | |
| Plaintiff, | CIVIL ACTION |
| v. | |
| | COMPLAINT 5:18-cv-00737 |
| TOLTECA ENTERPRISES, INC, d/b/a THE PHOENIX RECOVERY GROUP, EQUIFAX INFORMATION SERVICES, LLC, and EXPERIAN INFORMATION SOLUTIONS, INC. | JURY TRIAL DEMANDED |
| Defendants. | |

## COMPLAINT

**NOW COMES** Mandi M. Funk ("Plaintiff"), by and through her attorneys, Sulaiman Law Group, Ltd., complaining of the Defendants Tolteca Enterprises, Inc., doing business as, Phoenix Recovery Group ("Phoenix"), Equifax Information Services, LLC ("Equifax"), and Experian Information Solutions, Inc. ("Experian") (collectively, "Defendants") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for Defendants violations of the Fair Credit Reporting Act ("FCRA") pursuant to 15 U.S.C. §1681 et seq., and Phoenix's violations of the Fair Debt Collection Practices Act ("FDCPA") pursuant to 15 U.S.C. §1692 et seq.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by the FCRA, FDCPA, 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Plaintiff resides in this District and all of the events or omissions giving rise to the claims occurred in the Western District of Texas.

**PARTIES**

4. Plaintiff is a consumer and a natural person over 18-years-of-age who, at all times relevant, resided in the Western District of Texas.

5. Defendant Tolteca Enterprises, Inc., is a corporation that maintains its principal place of business at 2939 Mossrock, Suite 220, San Antonio, Texas. Defendant Phoenix Recovery Group is believed to be a trade name or subsidiary of Defendant Tolteca. Defendant Phoenix Recovery is a self-proclaimed Texas-based debt collection agency that provides professional accounts receivable management services in the U.S., Canada, Puerto Rico, and Mexico. Defendant Phoenix is a furnisher of information to the major credit reporting agencies, including Equifax and Experian.

6. Defendant Equifax is a Delaware limited liability company with its principal place of business in Atlanta, Georgia. Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports and credit files to third parties bearing on a consumer's credit worthiness, credit standing, and credit capacity on a nationwide basis, including in the State of Texas.

7. Defendant Experian is a corporation incorporated in the state of Ohio and is authorized to do business in the State of Texas. Experian is in the business of compiling and maintaining files on consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity.

**FACTS SUPPORTING CAUSE OF ACTION**

8. On or around April 2010, Plaintiff moved into the real property located at 3431 Oakdale, San Antonio, Texas ("subject property"). The subject property was owned and operated by Sage Crossing Apartments, LLC ("Sage Crossing").

9. On or around December 2011, Plaintiff moved out of the subject property owing $2,157.00 ("subject debt") in past due rent and fees.

10. In September 2016, Plaintiff needing to refinance her new home, sought refinancing. As soon as the application process began, Plaintiff discovered that Sage Crossing has reported a judgment of $2,157.00 on her credit reports.

11. In order to remedy the judgment, Plaintiff immediately paid the subject debt in exchange for a release of judgment. The release of judgment was filed with the Bexar County, Texas courthouse on February 9, 2017. *See* Exhibit A, a true and correct copy of the release of judgment filed in the Justice of Peace Court, Precinct #2-2, Bexar County Texas.

12. In exchange for the release of judgment, Sage Crossings and Plaintiff agreed to fully and finally settle all matters of controversy between them. Subsequently thereafter, Sage Crossing removed the judgment from Plaintiff's credit reports.

13. Plaintiff's personal liability on the subject debt was completely extinguished via the release of judgment, thus terminating the business relationship with Sage Crossing, and any of its successors and assigns, including Phoenix.

14. In late 2017, Plaintiff discovered that Phoenix has been reporting Plaintiff as in collections, with a past due balance of $5,015.00 on behalf of Sage Crossing.

15. Simultaneously, Plaintiff began receiving phone calls to her cellular phone and dunning letter to her home address. At no time did Plaintiff consent to receive phone calls to her cellular phone from Phoenix.

16. On February 1, 2018, Plaintiff sent a written dispute letter directly to Phoenix apprising them of inaccuracies on her credit reports from each of the credit reporting agencies and requesting

Phoenix to validate the subject debt. In this letter, Plaintiff requested Phoenix that all future communications to her be sent to her home address in writing.

17. On March 9, 2018, Phoenix responded to Plaintiff' letter to inform her that it has investigated her dispute and found that all information regarding the account is accurate and that it has instructed the credit reporting agencies to notate her account as "disputed."

18. In that letter, Phoenix failed to communicate that the correspondence is being sent from a debt collector.

### CREDIT REPORTING AND PLAINTIFF'S CREDIT DISPUTES TO EQUIFAX AND EXPERIAN

19. In March 2018, Plaintiff accessed her credit reports to determine whether Phoenix continued to report inaccurate and misleading information in her credit files. Plaintiff discovered that Equifax, Experian and Phoenix did in fact continue to report the subject debt as in collections and with a past due balance.

20. The reporting of the subject debt was inaccurate and misleading because Plaintiff's liability on the subject debt was extinguished via the release of judgment and thus should not have been reporting at all, let alone as in collections, in default, and with a past due balance.

   a. **Plaintiff's Dispute Letters to Equifax and Experian**[1]

21. On March 28, 2018, Plaintiff sent written credit dispute letters to Equifax and Experian requesting them to delete the subject debt from her credit reports. Specifically, the letter stated: "This account was paid in full and I am no longer liable for it per the attached release of judgement. In the included document, you will find that [Sage Crossing Apartments] has agreed to fully settle all matters. Please delete this collection from my credit report."

---

[1] Plaintiff's dispute letters to Equifax and Experian are nearly identical.

22. Plaintiff sent her dispute letters to Equifax and Experian via certified mail. Plaintiff attached the Release of Judgment to each letter.

23. Upon information and belief, Phoenix received notice of Plaintiff's dispute letters and all relevant information from Equifax and Experian within five days of Equifax and Experian receiving Plaintiff's dispute letters. *See* 15 U.S. Code §1681i(a)(2).

      **b.   Equifax's Failure to Reasonably Investigate Plaintiff's Dispute Letter**

24. On April 10, 2018, Equifax responded to Plaintiff's dispute letter by failing to reasonably investigate Plaintiff's request. In its investigation report, Equifax and Phoenix continued to report the subject debt as in Collections, with a "Balance Amount" of $5,015 as of April 2018.

25. The reporting of the Phoenix trade line is patently inaccurate and creates a materially misleading impression that Plaintiff is in default and is still obligated to pay a balance amount on the subject debt. However, Plaintiff is no longer personally liable on the subject debt by virtue of the release of judgement filed with the court on February 9, 2017.

      **c.   Experian's Failure to Reasonably Investigate Plaintiff's Dispute Letter**

26. On April 9, 2018, Experian responded to Plaintiff's dispute letter by failing to reasonably investigate Plaintiff's request by stating that: We are responding to your request to verify items(s) on your personal credit report. We have previously proceed this dispute and the credit grantor has verified its accuracy."  This was Plaintiff's first and only attempt to dispute the subject debt with Experian.

27. On April 11, 2018, Plaintiff was forced to access her Experian credit report to ascertain whether Experian removed the Experian tradeline. However, Experian and Pheonix continued to report the subject debt as in Collections, with a "Balance Amount" of $5,015, past due as of April 2018.

28. The reporting of the Phoenix trade line is patently inaccurate and creates a materially misleading impression that Plaintiff is in default and is still obligated to pay a balance amount on the subject debt. However, Plaintiff is no longer personally liable on the subject debt by virtue of the release of judgement filed with the court on February 9, 2017.

## IMPACT OF CONTINUING INCORRECT REPORTING ON PLAINTIFF'S CREDIT FILE

29. The entire experience has imposed upon Plaintiff significant distrust, frustration, distress, and has rendered Plaintiff helpless as to her ability to regain a firm foothold on her creditworthiness, credit standing, and credit capacity.

30. The inaccurate and incomplete reporting of subject debt has had significant adverse effects on Plaintiff's credit rating and severely affected her ability to obtain financing because it creates a false impression that Plaintiff is in collections, in default on the subject debt and is still obligated to pay a balance, rendering Plaintiff a high risk consumer and damaging her creditworthiness.

31. As a result of the conduct, actions, and inaction of Defendants, Plaintiff has suffered various types of damages as set forth herein, including specifically, the loss of credit opportunity, the loss of ability to purchase and benefit from a credit line, increased interest rates, increased insurance rates, time and money expended meeting with her attorneys, certified mail expenses, tracking the status of her disputes, monitoring her credit files, and mental and emotional pain and suffering.

32. Moreover, on February 6, 2018, Plaintiff was denied a mortgage loan from Loan Depot as a result of Defendants' inaccurate and materially misleading reporting of the subject debt.

33. Due to the conduct of the Defendants, Plaintiff was forced to retain counsel to resolve the erroneous credit reporting of the subject debt.

### COUNT I - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
(AGAINST EQUIFAX)

34. Plaintiff restates and realleges paragraphs 1 through 33 as though fully set forth herein.

35. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

36. Equifax is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

37. At all times relevant, the above mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

38. At all times relevant, Plaintiff is a "consumer" as the term is defined by 15 U.S.C. §1681a(c).

39. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

40. The FCRA requires that the credit reporting industry to implement procedures and systems to promote accurate credit reporting.

41. If a consumer notifies a credit reporting agency of a dispute concerning the accuracy of any item of credit information, the FCRA requires the credit reporting agency to reinvestigate free of charge and record the current status of the disputed information, or delete the item within 30 days of receiving the dispute. 15 U.S.C. §1681i(a)(1)(A).

42. Equifax prepared Plaintiff's consumer reports containing inaccurate and materially misleading information by reporting the subject debt as in collections, in default and with a balance amount greater than $0, when in fact Plaintiff was no longer personally liable on the subject debt by virtue of the release of judgement filed with the court on February 9, 2017.

43. Equifax prepared an incomplete consumer report of Plaintiff by failing to completely and accurately notate that Plaintiff is disputing the reporting of the subject debt in violation of 15 U.S.C. §1681c(f).

44. Equifax violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished and refurnished regarding Plaintiff. Equifax prepared and supplied a patently false, incomplete, and a materially misleading consumer report concerning Plaintiff to third parties.

45. Equifax knew that the subject debt was not owed at the time of Plaintiff's dispute as Plaintiff provided Equifax with the filed release of judgment which release of judgment in which Sage Crossings and Plaintiff agreed to fully and finally settle all matters of controversy between them.

46. As such, Plaintiff's personal liability on the subject debt was completely extinguished via the release of judgment, thus terminating the business relationship with Sage Crossing, and any of its successors and assigns, including Phoenix.

47. Equifax violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the disputed information was accurate and to subsequently delete or correct the information in Plaintiff's credit files.

48. Had Equifax taken any steps to investigate Plaintiff's valid disputes, it would have determined that Plaintiff was no longer liable on the subject debt based on the execution of her release of judgment.

49. Equifax violated 15 U.S.C. §1681i(a)(2) by failing to provide notification of Plaintiff's disputes to Phoenix. Upon information and belief, Equifax also failed to include all relevant

8

information as part of the notice to Phoenix regarding Plaintiff's disputes that Equifax received from Plaintiff.

50. Equifax violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiff and Phoenix with regard to the subject debt.

51. Equifax violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify the incorrect information that was the subject of Plaintiff's disputes.

52. Equifax violated 15 U.S.C. §1681i(a)(5)(B) by reporting disputed information without certification from Phoenix that the information was complete and accurate, and without sending notice of the re-reporting to Plaintiff.

53. After Plaintiff's written detailed disputes, Equifax had specific information related to Plaintiff's release of judgment filed with the Bexar County, Texas courthouse on February 9, 2017. *See* Exhibit A.

54. Equifax knew that the inaccurate designations of the subject debt on Plaintiff's consumer reports under the Phoenix trade line as in collections, in default with a high balance amount months after executing the release of judgment would have significant adverse effect on Plaintiff's credit worthiness and ability to receive favorable financing.

55. Despite actual knowledge that Plaintiff's credit file contained erroneous information, Equifax readily sold Plaintiff's inaccurate, incomplete, and misleading report to one or more third parties, thereby misrepresenting facts about Plaintiff and, ultimately, Plaintiff's creditworthiness.

56. By deviating from the standards established by the credit reporting industry and the FCRA, Equifax acted with reckless disregard for its duties to report accurate and complete consumer credit information.

57. It is Equifax's regular business practice to continually report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate.

58. Equifax's non-compliance with the requirements of the FCRA is indicative of the reckless, willful, and wanton nature of its conduct in maintaining Plaintiff's consumer file and reporting Plaintiff's credit information.

59. Equifax's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff.

60. As stated above, Plaintiff was severely harmed by Equifax's conduct.

**WHEREFORE**, Plaintiff MANDI M. FUNK respectfully prays this Honorable Court for the following relief:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;
b. An order directing Equifax to delete the inaccurate information from Plaintiff's credit reports and credit files;
c. Award Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;
d. Award Plaintiff statutory damages of $1,000.00 for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;
e. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;
f. Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1681n(3) and 15 U.S.C. §1681o(2); and
g. Award any other relief as this Honorable Court deems just and appropriate.

### COUNT II - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
(AGAINST EXPERIAN)

61. Plaintiff restates and realleges paragraphs 1 through 33 as though fully set forth herein.

62. Experian is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

63. Experian is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

64. At all times relevant, the above mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

65. At all times relevant, Plaintiff is a "consumer" as the term is defined by 15 U.S.C. §1681a(c).

66. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

67. The FCRA requires that the credit reporting industry to implement procedures and systems to promote accurate credit reporting.

68. If a consumer notifies a credit reporting agency of a dispute concerning the accuracy of any item of credit information, the FCRA requires the credit reporting agency to reinvestigate free of charge and record the current status of the disputed information, or delete the item within 30 days of receiving the dispute. 15 U.S.C. §1681i(a)(1)(A).

69. Experian prepared Plaintiff's consumer reports containing inaccurate and materially misleading information by reporting the subject debt as in collections, in default and with a balance amount greater than $0, when in fact Plaintiff was no longer personally liable on the subject debt by virtue of the release of judgement filed with the court on February 9, 2017.

70. Experian prepared an incomplete consumer report of Plaintiff by failing to completely and accurately notate that Plaintiff is disputing the reporting of the subject debt in violation of 15 U.S.C. §1681c(f).

71. Experian violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished and refurnished regarding Plaintiff. Experian prepared and supplied a patently false, incomplete, and a materially misleading consumer report concerning Plaintiff to third parties.

72. Experian knew that the subject debt was not owed at the time of Plaintiff's dispute as Plaintiff provided Experian with the filed release of judgment which release of judgment in which Sage Crossings and Plaintiff agreed to fully and finally settle all matters of controversy between them.

73. As such, Plaintiff's personal liability on the subject debt was completely extinguished via the release of judgment, thus terminating the business relationship with Sage Crossing, and any of its successors and assigns, including Phoenix.

74. Experian violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the disputed information was accurate and to subsequently delete or correct the information in Plaintiff's credit files.

75. Had Experian taken any steps to investigate Plaintiff's valid disputes, it would have determined that Plaintiff was no longer liable on the subject debt based on the execution of her release of judgment.

76. Experian violated 15 U.S.C. §1681i(a)(2) by failing to provide notification of Plaintiff's disputes to Phoenix. Upon information and belief, Experian also failed to include all relevant information as part of the notice to Phoenix regarding Plaintiff's disputes that Experian received from Plaintiff.

77. Experian violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiff and Phoenix with regard to the subject debt.

78. Experian violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify the incorrect information that was the subject of Plaintiff's disputes.

79. Experian violated 15 U.S.C. §1681i(a)(5)(B) by reporting disputed information without certification from Phoenix that the information was complete and accurate, and without sending notice of the re-reporting to Plaintiff.

80. After Plaintiff's written detailed disputes, Experian had specific information related to Plaintiff's release of judgment filed with the Bexar County, Texas courthouse on February 9, 2017. *See* Exhibit A.

81. Experian knew that the inaccurate designations of the subject debt on Plaintiff's consumer reports under the Phoenix trade line as in collections, in default with a high balance amount months after executing the release of judgment would have significant adverse effect on Plaintiff's credit worthiness and ability to receive favorable financing.

82. Despite actual knowledge that Plaintiff's credit file contained erroneous information, Experian readily sold Plaintiff's inaccurate, incomplete, and misleading report to one or more third parties, thereby misrepresenting facts about Plaintiff and, ultimately, Plaintiff's creditworthiness.

83. By deviating from the standards established by the credit reporting industry and the FCRA, Experian acted with reckless disregard for its duties to report accurate and complete consumer credit information.

84. It is Experian's regular business practice to continually report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate.

85. Experian's non-compliance with the requirements of the FCRA is indicative of the reckless, willful, and wanton nature of its conduct in maintaining Plaintiff's consumer file and reporting Plaintiff's credit information.

86. Experian's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff.

87. As stated above, Plaintiff was severely harmed by Experian's conduct.

**WHEREFORE**, Plaintiff MANDI M. FUNK respectfully prays this Honorable Court for the following relief:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;
b. An order directing Experian to delete the inaccurate information from Plaintiff's credit reports and credit files;
c. Award Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;
d. Award Plaintiff statutory damages of $1,000.00 for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;
e. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;
f. Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1681n(3) and 15 U.S.C. §1681o(2); and
g. Award any other relief as this Honorable Court deems just and appropriate.

### COUNT III - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
(AGAINST PHOENIX)

88. Plaintiff restates and realleges paragraphs 1 through 33 as though fully set forth herein.

89. Plaintiff is a "consumer" as defined by 15 U.S.C. §§1681a(b) and (c).

90. Plaintiff is a "person" as defined by 15 U.S.C. §1681a(b).

91. Phoenix is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

92. At all times relevant, the above mentioned credit reports were "consumer reports" as the term is defined by §1681a(d)(1).

93. Phoenix violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving requests for an investigation from Equifax, Experian, and Plaintiff.

94. Phoenix violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information, provided by Equifax, Experian, and Plaintiff pursuant to 15 U.S.C. §1681i(a)(2).

95. Had Phoenix reviewed the information provided by Equifax, Experian and Plaintiff, it would have corrected the inaccurate designation of the subject debt, transmitting the correct information to Equifax and Experian. Instead, Phoenix wrongfully and erroneously confirmed its inaccurate reporting without conducting a reasonable investigation.

96. Phoenix violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the complete results of the investigation or reinvestigation of Plaintiff's disputes with Equifax and Experian.

97. Phoenix violated 15 U.S.C. §1681s-2(b)(1)(C)-(D) by failing to report the results of its investigation or reinvestigation to Equifax and Experian after being put on notice and discovering inaccurate, incomplete, and misleading reporting with respect to the subject debt.

98. Phoenix violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the inaccurate information from appearing and reappearing on Plaintiff's credit files.

99. Phoenix failed to conduct a reasonable investigation of its reporting of the subject debt, record that the information was disputed, or delete the inaccurate reporting from Plaintiff's credit files within 30 days of receiving notice of Plaintiff's disputes from Equifax and Experian under 15 U.S.C. §1681i(a)(1).

100. Despite the blatantly obvious errors in Plaintiff's credit files, and Plaintiff's efforts to correct the errors, Phoenix did not correct the errors or the trade line to report accurately and

completely. Instead, Phoenix wrongfully furnished and re-reported the inaccurate, incomplete and misleading information after Plaintiff's disputes to Equifax and Experian.

101. A reasonable investigation by Phoenix would have confirmed the veracity of Plaintiff's disputes, yet the inaccurate information continued to be reported in Plaintiff's credit files.

102. Had Phoenix taken steps to investigate Plaintiff's valid disputes or Equifax and Experian's requests for investigation, it would have permanently corrected the erroneous, incomplete, and materially misleading credit reporting.

103. By deviating from the standards established by the debt collection industry and the FCRA, Phoenix acted with reckless and willful disregard for its duty as a furnisher to report accurate and complete consumer credit information to Equifax and Experian.

**WHEREFORE,** Plaintiff MANDI M. FUNK respectfully pray this Honorable Court for the following relief:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;
a. An order directing that Phoenix immediately delete all of the inaccurate information from Plaintiff's credit reports and credit files;
b. Award Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;
c. Award Plaintiff statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n;
d. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;
e. Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and
f. Award any other relief as this Honorable Court deems just and appropriate.

**COUNT IV – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**
(AGAINST PHEONIX)

104. Plaintiff restates and realleges paragraphs 1 through 33 as though fully set forth herein.

105. The Plaintiff is a "consumer" as defined by FDCPA §1692a(3).

106. The subject debt is a "debt" as defined by FDCPA §1692a(5) as it arises out of a transaction due or asserted to be owed or due to another for personal, family, or household purposes.

107. Phoenix is a "debt collector" as defined by §1692a(6) because its principal purpose is to collect debts and uses the mail, telephones, and credit reporting to collect alleged delinquent consumer accounts.

108. Moreover, Phoenix is a "debt collector" because it acquired collection rights to the subject debt after it was allegedly in default. 15 U.S.C. §1692a(6).

109. Phoenix used the mail, telephone, and credit reporting to attempt to collect the subject debt and, as such, engaged in "communications" as defined in FDCPA §1692a(2).

110. All of Phoenix's mail, telephone, and credit reporting communications to Plaintiff and regarding Plaintiff were made in connection with the collection of the subject debt.

111. Phoenix violated 15 U.S.C. §§1692e(2), e(8), e(10), e(11), f, and f(1) through its debt collection efforts on the subject account.

    a.  **Violations of FDCPA § 1692e**

112. Phoenix violated §1692e(2) when it falsely misrepresented the character, amount, or legal status of the subject debt. The subject debt was never owed at the time Phoenix demanded payment. Plaintiff's personal liability on the subject debt was completely extinguished via the release of judgment, thus terminating the business relationship with Sage Crossing, and any of its successors and assigns, including Phoenix.

113. Phoenix violated §1692e(8) by threatening and communicating patently false credit information to Equifax and Experian that it knew, or should have known, to be false by inaccurately reporting the subject debt as in collections with a high balance. This information was inaccurate and misleading because Plaintiff's personal liability on the subject debt was completely extinguished via the release of judgment, thus terminating the business relationship with Sage Crossing, and any of its successors and assigns, including Phoenix.

114. Phoenix had actual knowledge that the subject debt was not owed because it received proof of such from Plaintiff on no less than two separate occasions.

115. Phoenix violated §1692e(10) when it used false representations and/or deceptive means to collect and/or attempt to collect on the subject debt. The subject debt was not owed at the time Phoenix demanded payment.

116. Phoenix violated §1692e(11) by failing to disclose in its March 9, 2018 communication with Plaintiff that the communication was from a debt collector.

    **b. Violations of FDCPA § 1692f**

117. Phoenix violated §1692f when it used unfair and unconscionable means to collect the subject account. The subject account was not owed at the time Phoenix demanded payment. Plaintiff did not have any legal obligation to pay Phoenix as a result of executing and the filing of the release of judgment. Instead, Phoenix attempted to dragoon the Plaintiff into making a payment by reporting the subject debt to the credit reporting agencies.

118. Phoenix violated §1692f(1) by attempting to collect a debt that was uncollectible as a matter of law as Plaintiff's personal liability on the subject debt was completely extinguished via the release of judgment, thus terminating the business relationship with Sage Crossing, and any of its successors and assigns, including Phoenix.

119. As an experienced debt collector, Phoenix knew or should have known the ramifications of collecting on debts that are not owed.

120. Upon information and belief, Phoenix systematically attempts to collect debts through harassing conduct and has no procedures in place to assure compliance with the FDCPA.

121. As stated above, Plaintiff was severely harmed by Phoenix's conduct.

122. Upon information and belief, Phoenix willfully reports debts on consumers' credit reports to compel consumers to make payment on debts that are not owed.

**WHEREFORE**, Plaintiff MANDI M. FUNK respectfully prays this Honorable Court for the following relief:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;
b. Award Plaintiff statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;
c. Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and
d. Award any other relief as this Honorable Court deems just and appropriate.

**Plaintiff demands trial by jury.**

Dated: July 17, 2018                                              Respectfully Submitted,

/s/ Marwan R. Daher                                               /s/ Omar T. Sulaiman
Marwan R. Daher, Esq.                                             Omar T. Sulaiman, Esq.
*Counsel for Plaintiff*                                           *Counsel for Plaintiff*
Sulaiman Law Group, Ltd                                           Sulaiman Law Group, Ltd
2500 South Highland Avenue                                        2500 South Highland Avenue
Suite 200                                                         Suite 200
Lombard, IL 60148                                                 Lombard, IL 60148
Telephone: (630) 537-1770                                         Telephone: (630) 575-8141
mdaher@sulaimanlaw.com                                            osulaiman@sulaimanlaw.com